NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

RONALD H. POSYTON III,

    *Plaintiff*,

v.

TOWNSHIP OF WESTFIELD, et al,

    *Defendants*.

Civil Action No. 17-5139

**OPINION**

### John Michael Vazquez, U.S.D.J.

    Plaintiff Ronald Posyton ("Plaintiff") seeks to bring this action *in forma pauperis* pursuant to 28 U.S.C. § 1915. D.E. 8. Plaintiff filed the initial Complaint on July 14, 2017, D.E. 1, and then filed an Amended Complaint ("FAC") on August 21, 2017.[1] D.E. 8. Because Plaintiff is still proceeding *in forma pauperis*, the Court will screen Plaintiff's FAC pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons discussed below, the Court **GRANTS** Plaintiff's application to proceed *in forma pauperis* but Counts II, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failing to state a claim upon which relief can be granted. Counts I, III, IV, V remain.[2]

---

[1] This Court therefore reviews the FAC, as opposed to the original Complaint, for screening purposes.

[2] The Court's role at this stage is to perform an initial screening function pursuant to Section 1915(e)(2)(B). The Court's ruling does not prejudice Defendants from litigating this matter as they see fit, including the decision whether to file a motion to dismiss pursuant to Rule 12(b)(6).

## I. FACTUAL BACKGROUND

Plaintiff's causes of action arise from his interactions with Defendants on June 27, 2017. Plaintiff believes that during these interactions each Defendant violated Plaintiff's state and federal constitutional rights. Consequently, he seeks damages pursuant to 42.U.S.C. § 1983 ("§ 1983"), the New Jersey Civil Rights Act (N.J.S.A. § 10:6-1) ("NJCRA"), and the New Jersey Tort Claims Act (N.J.S.A. § 59:1-1) ("NJTCA").

Plaintiff alleges that on the evening of June 27, 2017 he walked into the Westfield Police Department headquarters and asked Defendant Kevin O'Keefe ("O'Keefe"), a police officer, legal questions that Officer O'Keefe was unable to answer. FAC ¶ 16; D.E. 8. Disappointed, Plaintiff left and walked to the 16 Prospect Street Wine Bar and Bistro ("Bistro"), also located in Westfield, New Jersey. *Id.* ¶ 17. Plaintiff claims that Defendant Kenneth Hogan ("Hogan") was sitting near Plaintiff at the bar and took issue with Plaintiff's inability to pay for a drink. *Id.* ¶ 19. Hogan allegedly placed his hands on Plaintiff's shoulders and told him to leave the bar. *Id.* ¶ 21. The Bistro's owner, Timothy Boyle ("Boyle"), then approached Plaintiff and Hogan and asked Plaintiff to leave. *Id.* ¶ 27. Plaintiff claims he agreed to leave, and started to do so, but that Boyle then placed his hand on Plaintiff's back. *Id.* ¶ 30.

Plaintiff walked outside the Bistro and called the Westfield Police Department to report an assault and battery on his person. *Id.* ¶ 32. Defendant police officer Steven Martinez ("Martinez") responded and was soon joined at the Bistro by Defendant police officers Ricardo Johnson ("Johnson"), Christopher Forcenito ("Forcenito), Michael Freeman ("Freeman"), and O'Keefe (collectively "Defendants" or the "Officers"). *Id.* ¶¶ 33, 36. Plaintiff then explained to Officers Martinez, Johnson, and Forcenito his "side of the story" and his "theory on excessive force." *Id.*

¶ 38. Plaintiff also told the Officers that if they touched him they would be committing excessive force. *Id.* ¶ 39.

Plaintiff believes that either Officer O'Keefe or Freeman then entered the Bistro and spoke with Hogan and Boyle. *Id.* ¶ 40. During that conversation, Hogan and Boyle allegedly made accusations involving Plaintiff's pant zipper being down in the Bistro. *Id.* ¶ 78. Subsequently, the Officers told Plaintiff they would transport him home. Plaintiff replied, "I don't want to go home," and asked Officer O'Keefe if he could walk home. *Id.* ¶¶ 44-45. Officer O'Keefe told Plaintiff that if he would not go home, then the Officers would bring him to a police station in Elizabeth, NJ. *Id.* ¶ 46. Plaintiff believes that Officer O'Keefe also made an accusation about being able to smell Plaintiff at the station. *Id.* ¶ 48. At this point Plaintiff thought he was seized and told the Officers, "I unequivocally invoke my right to counsel." *Id.* ¶ 49.

Plaintiff claims that he then tried to enter the back seat of one of the police cars, but that Officers Forcenito and Martinez "without giving him any warning, roughly grabbed and jerked him backwards" with an amount of force that "practically made [him] fall to the ground." *Id.* ¶ 51. Officer Forcenito then allegedly "started to frisk [Plaintiff's] entire body without consent, including in-between his thighs, and around his private parts." *Id.* ¶ 53. Officer Martinez contributed to this "frisk by patting [Plaintiff] a couple of times on his upper body." *Id.* After Plaintiff asked why they were touching him, Officer Martinez responded, "[We're] trained to." *Id.* ¶ 56.

Plaintiff alleges that he then entered into the police car's backseat, where Officer Forcenito fastened a seatbelt onto him and shut the door. *Id.* ¶ 57. Plaintiff says that the Officers then searched his name in a warrant database, told him he was being detained, and O'Keefe told him that there was a warrant for his arrest in South Carolina. *Id.* ¶¶ 59, 68-69. Plaintiff told Officer

3

O'Keefe, "I've never been to South Carolina in my life," and Officer O'Keefe shut the door to converse with the other Officers. *Id.* ¶ 70. A few minutes later, the Officers confirmed that there were no outstanding arrest warrants for Plaintiff and drove Plaintiff to his house. *Id.* ¶¶ 73, 76.[3]

After arriving at the residence Plaintiff shares with his mother, Plaintiff told the Officers that they could not step onto his property, that he would go into his house, and that he did want them to ring the doorbell. *Id.* ¶¶ 84, 87. Notwithstanding these statements, the Officers rang the doorbell, which was answered by Plaintiff's mother, and left Plaintiff with his mother.

In his FAC, Plaintiff alleges numerous causes of action under § 1983, the NJCRA, and the NJTCA. The claims include allegations against various officers for an illegal search and seizure in violation of his Fourth Amendment rights (Counts I, IV); retaliation for exercising his rights under the First Amendment (Counts II, VI); false imprisonment in violation of his Fourteenth Amendment rights (Count III); excessive force in violation of his Fourth Amendment rights (Count V); failure to intervene in violation of his Fourteenth Amendment rights (Count VII); unlawful entry onto his property and a subsequent illegal search in violation of his Fourth Amendment rights (Counts VIII, IX); tarnished reputation in violation of N.J. Constitution Art. I (Count X); violation of his right to counsel under the Fourteenth Amendment (Count XI); assault and battery (Count XII); intrusion upon seclusion (Count XIII); trespassing (Count XIV), and negligent hiring (Count XV). Additionally, Plaintiff alleges a claim against civilian Kenneth Hogan for assault and battery (Count XVI).

Plaintiff filed his initial Complaint on July 14, 2017, and Defendants thereafter waived service of process. D.E. 4-7. Plaintiff then filed an Amended Complaint on August 21, 2017, and

---

[3] The arrest warrant was apparently for Plaintiff's father, Ronald Posyton Jr., who does not live in Westfield. D.E. 8 ¶ 72.

4

Defendants again waived service, D.E. 9-11, and filed a Motion for Summary Judgment, D.E. 12. The Court administratively terminated the motion because the Court had not yet performed the required screening to either the Complaint or Amended Complaint nor had the Court authorized service of either. D.E 13.

## II.  STANDARD OF REVIEW

Pursuant to § 1915, this Court excuses Plaintiff from prepayment of fees because he has "establish[ed] that he is unable to pay the costs of his suit." *Walker v. People Exp. Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). However, when allowing a plaintiff to proceed *in forma pauperis*, the Court must review the complaint and dismiss the action if it determines that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune. 28 U.S.C. § 1915(e)(2). When considering dismissal under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief can be granted, the Court must apply the same standard of review as that for dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). To survive dismissal under Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In addition, because Plaintiff is proceeding *pro se*, the Court construes the pleadings liberally and holds them to a less stringent standard than those filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "The Court need not, however, credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *D'Agostino v. CECOM RDEC*, No. 10-4558, 2010 WL

5

3719623, at *1 (D.N.J. Sept. 14, 2010) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

### III. ANALYSIS

At the outset, Plaintiff lists the Township of Westfield as a Defendant, but fails to raise any specific allegations against the township. Thus, the Court dismisses the Township of Westfield as a defendant from the lawsuit. The dismissal is without prejudice.

### 1. Section 1983 and the NJCRA[4]-Individual Liability (Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI)

Plaintiff brings claims pursuant to 42 U.S.C § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v.* Connor, 490 U.S. 386, 393-94 (1989). In order to state claim under Section 1983, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state

---

[4] Plaintiff's causes of action in Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI are brought pursuant to both § 1983 and the NJCRA. The "NJCRA was modeled after § 1983, [and so] 'courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983' and 'have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart.'" *Velez v. Fuentes*, No. CV156939MASLHG, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (quoting *Samoles v. Lacey Twp.*, No. 12–3066, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) (internal quotation marks omitted)). Thus, the Court's analysis of these claims under § 1983 resolves the claims under NJCRA as well. Plaintiff's cause of action brought pursuant only to NJCRA will be addressed separately below.

6

or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

Plaintiff alleges violations of his federal constitutional rights, including his First, Fourth and Fourteenth Amendment rights, against various Westfield police officers, in their individual capacities.

### a. Fourth Amendment

Plaintiff claims violations of his Fourth Amendment rights due to the Officers involuntary transportation of him home (Count I), Officers Martinez's and Forcenito's pat down of Plaintiff (Count IV), Officers Martinez and Forcenito's use of excessive force in pulling Plaintiff back from entering the police car (Count V), and Officers Martinez and Johnson's entrance onto Plaintiff's property (Counts VIII, IX).

"The Fourth Amendment, which protects persons from 'unreasonable searches and seizures' prohibits false arrest, false imprisonment, illegal search and seizure, and the use of excessive force.'" *Roman v. City of Newark*, No. 16-1110, 2017 WL 436251, at *3 (D.N.J. Jan. 31, 2017) (quoting U.S. Const. amend. IV). Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 618 (1988) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* at 619 (quotation marks and citation omitted).

### 1. Illegal Search and Seizure of Plaintiff's Person

Plaintiff's first cause of action alleges that Officers O'Keefe, Martinez, Forcenito, Johnson, and Freeman illegally seized him without probable cause or a warrant when they transported him home against his will. FAC ¶ 111. A seizure occurs when a reasonable person "would have believed he was not to free to leave." *United States v. Mendenhall*, 446 U.S. 544, 544 (1980). However, even if the circumstances suggest that a reasonable person would not feel free to leave, the seizure is only illegal if it is unreasonable. *Elkins v. United States*, 364 U.S. 206, 222 (1960). Plaintiff's alleged circumstances of being ordered into the back of a police car, FAC ¶ 48, told he was being detained by police officers, *Id.* ¶ 68, and transported home against his will, *Id.* ¶76, would make a reasonable person believe that he was not free to leave.[5] Further, the facts provided in Plaintiff's FAC do not provide this Court with any reason to think that it was reasonable for Plaintiff to be transported against his will. As pled, the FAC does not indicate that law enforcement had, for example, probable cause to believe that Plaintiff had committed an offense. Thus, Plaintiff has made an adequate threshold showing concerning this claim.

Next, Plaintiff's fourth cause of action alleges that Officers Martinez and Forcenito illegally searched his person without consent, reasonable suspicion, or a warrant. *Id.* ¶¶ 53, 114. Plaintiff claims that Officers Martinez and Forcenito searched him "by frisking his entire body." *Id.* ¶ 114. A law enforcement officer may conduct a frisk, sometimes referred to as a pat down, "for his own protection and safety . . . to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted." *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979).

---

[5] To be clear, the Court is assuming the truth of Plaintiff's factual assertions at this, the screening, stage. The Court is not finding that the alleged facts actually occurred.

8

While a frisk is a variety of a search, its less intrusive nature has led the Court to say that police may justify conducting a frisk by "point[ing] to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Thus, the requirement of an officer needing only reasonable suspicion of the person being armed and dangerous to justify a frisk is an exception to the general requirement of probable cause for searches. *Ybarra*, 444 U.S. at 93. Thus, a law enforcement officer may conduct a protective pat-down search for weapons when the officer reasonably believes, based on the circumstances, that the officer's safety or the safety of others is in danger. *United States v. Murray*, 821 F.3d 393-93 (3d Cir. 2016) (citing *Terry*, 392 U.S. at 9, 27, and *Ybarra*, 444 U.S. at 92-93, 94).

Here, the FAC does not provide the Court with reason to believe that the officers had a reasonable articulable suspicion to frisk Plaintiff. The FAC does not indicate that the Defendants had a reason to believe that Plaintiff had a weapon or was otherwise a danger to the Officers. Because the Court has found that the FAC adequately indicates that the officers did not have a basis to restrain Plaintiff in the first place, the Court will likewise to permit the claim concerning the frisk (which was a result of the detention) to proceed past the screening stage as to Officers Martinez and Forcenito.

### 2. Excessive Force

Plaintiff's fifth cause of action alleges that Officers Martinez and Forcenito used excessive force when they pulled Plaintiff away from entering the police car in order to conduct a frisk of his person. *Id.* ¶ 115. "The use of excessive force is itself an unlawful "seizure" under the Fourth Amendment." *Couden v. Duffy*, 446 F. 3d 483, 496 (3d Cir. 2006). In assessing the validity of an excessive force claim, a court must determine the objective reasonableness of the alleged conduct.

9

*Id.* A court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Groman*, 47 F.3d at 634 (quoting *Graham*, 490 U.S. at 396). Further, when more than one officer is sued on a Fourth Amendment excessive force claim, the district court must evaluate each officer's liability separately. *Bishop v. Hackel*, 636 F.3D 757, 767 (6th Cir. 2011).

Here, Plaintiff alleges that after the Officers told him that they would transport him home, he "proceeded to peacefully enter the back seat [of a police car]" but that Officers Forcenito and Martinez "without giving him any warning, roughly grabbed and jerked him backwards without consent," which caused him to lose his balance. FAC ¶ 51. The FAC appears to indicate that both Officers were involved.[6] Taking Plaintiff's factual allegation as true, Officers Forcenito and Martinez's use of force does not appear reasonable. Officers Forcenito and Martinez ordered Plaintiff into the car without placing him under arrest. Plaintiff apparently began to follow their instruction to enter the police vehicle, when without trying to first give any verbal warning or command, the Officers used force against him. Given that the Court has found that the FAC plausibly pleads that the Officers unreasonably seized Plaintiff by placing and holding him in the police car without probable cause or a warrant, Officers Forcenito and Martinez's force in effectuating that seizure is also sufficiently pled for the purposes of screening. Thus, Plaintiff has made an adequate threshold showing concerning his excessive force claim against Officers Forcenito and Martinez.

---

[6] "[T]o establish liability under Section 1983, a defendant 'must have personal involvement in the alleged wrongdoing.'" *Jutrowski v. Twp. of Riverdale*, CV 13-7351, 2017 WL 1395484, at *4 (D.N.J. Apr. 17, 2017) (quoting *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)). Thus, a plaintiff must identify which defendant took what actions to provide an evidentiary basis for his or her claims.

10

### 3. Unlawful Entry on Plaintiff's Property

Plaintiff's eighth and ninth causes of actions allege violations of Plaintiff's Fourth Amendment rights due to Officers Martinez and Johnson's unlawful entrance onto Plaintiff's property and Martinez's unreasonable search of Plaintiff's home. Specifically, Plaintiff alleges that the officers unlawfully walked on the property and that Martinez then improperly rang the doorbell. FAC ¶ 119. Plaintiff claims the following: "Martinez rang the [Plaintiff's] doorbell, and then [Plaintiff's] mother answered the door." FAC ¶ 92. "When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak." *Kentucky v. King*, 563 U.S. 452, 469–70 (2011). The Supreme Court has found that such actions do not threaten or violate the Fourth Amendment without the police taking further unconstitutional action. *Id.* Thus, Plaintiff's factual allegations do not plausibly plead an unlawful entrance or illegal search. The Court dismisses Counts VIII and IX without prejudice.

### b. Fourteenth Amendment

Plaintiff claims violations of his Fourteenth Amendment rights due to the Officers' false imprisonment of his person (Count III), Officers O'Keefe's and Freeman's failure to intervene to stop Officers Forcenito and Martinez from frisking his person (Count VII), and a deprivation of his right to counsel (Count XI).

### 1. False Imprisonment

Plaintiff's third cause of action alleges that the Officers falsely imprisoned him. FAC ¶ 113. "A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law. *Groman*, 47

F.3d at 636 (citing *Baker v. McCollan,* 443 U.S. 137, 142 (1979)). "To state a claim for false imprisonment, a plaintiff must establish: (1) that she [or he] was detained; and (2) that the detention was unlawful." *James v. City of Wilkes-Barre,* 700 F.3d 675, 682–83 (3d Cir. 2012). Plaintiff alleges that he was falsely imprisoned when he was forced to enter the police car despite having committed no wrongdoing, Officer Forcenito fastened a seatbelt onto him and closed the door, and Plaintiff realized that he "was basically locked inside a three foot by three foot jail cell . . . ." *Id.* FAC ¶¶ 57-58. For the same reasons that the Court is permitting the alleged illegal seizure to proceed past screening, the false imprisonment claim may also go forward at this time.

### 2. Failure to Intervene

Next, Plaintiff's seventh cause of action alleges that Officers O'Keefe and Freeman failed to intervene "to prevent Forcenito and Martinez from illegally frisking" him. FAC ¶ 117. An on-looking "defendant police officer may be held accountable both for his own use of excessive force . . . as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." *Sanchez v. City of Chi.,* 700 F.3D 919, 926 (7th Cir. 2012) (citations omitted). "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Smith v. Mensinger,* 293 F.3d 641, 651 (3d Cir. 2002) (citation omitted). Here the FAC does not plausibly plead that Officers O'Keefe or Freeman had a reasonable opportunity to stop the alleged unlawful frisk, which seems to have occurred over a short period of time. As a result, Count VII is dismissed without prejudice.

### 3. Right to Counsel

Plaintiff's eleventh cause of action alleges a violation under the Fourteenth Amendment to his right of counsel. FAC ¶ 121. Individuals may have a right to counsel under either the

Fifth or Sixth Amendments. The Sixth Amendment right to counsel attaches at the initiation of formal proceedings. *Kirby v. Illnois*, 406 U.S. 682, 688-89 (1972). The government has not brought any criminal charges against Plaintiff. Therefore, Plaintiff does not plausibly plead a violation of the Sixth Amendment.

The Fifth Amendment right to counsel attaches in the context of a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* The Fifth Amendment right to counsel protects a criminal defendant's "privilege against compulsory self-incrimination." *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980). Here, Plaintiff's Fifth Amendment right of counsel is inapplicable because Plaintiff, by his own admission, stayed silent. FAC ¶ 66. More importantly, the FAC fails to plausibly plead that the officers engaged in any questioning or other conduct that could be considered interrogation for purposes of the Fifth Amendment. Plaintiff certainly does not claim that after he requested an attorney, the Officers questioned him and he thereafter incriminated himself. Therefore, Count XI is dismissed without prejudice.

### c. First Amendment

Plaintiff claims violations of his First Amendment rights due to the Officers' retaliation against Plaintiff in the form of their searching of his name through a warrant database and arresting Plaintiff for the alleged reason of Plaintiff stating that a former police officer assaulted and battered him (Count II) as well as retaliation in the form of Officers Martinez and Forcenito's alleged use of extra force during their frisk of Plaintiff's person (Count VI).

In order "to establish a First Amendment retaliation claim, a plaintiff 'must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with

retaliation; and (3) that the protected activity caused the retaliation.'" *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013) (quoting *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). "The threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation." *Eichenlaub*, 385 F.3d at 282.

Here, Plaintiff fails to allege sufficient facts for the Court to find a plausible claim of retaliation or a causal connection between the claimed retaliatory actions and Plaintiff's verbal statements. Plaintiff's belief that the Officer's actions were retaliatory is merely a conclusory assertion without sufficient factual backing. Therefore, Counts II and VI are dismissed without prejudice.

### 2. New Jersey Civil Rights Act

In addition to bringing claims under 42 U.S.C. § 1983 in conjunction with NJCRA, Plaintiff also asserts a claim in Count X under only the NJCRA for tarnished reputation. "To establish a cause of action [under NJCRA], a plaintiff must allege a specific constitutional violation. *Matthews v. New Jersey Inst. of Tech.*, 717 F. Supp. 2d 447, 452 (D.N.J. 2010) (citing N.J.S.A. 10:6–2(c)). Here, Plaintiff alleges that Officers Martinez and Johnson tarnished his reputation "by presenting [Plaintiff] to [his mother] without due process of law." Courts recognize a protected liberty interest when "government allegations . . . tarnish a person's good name, reputation, honor, or integrity." *Matthews*, 717 F. Supp. 2d at 453 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 436 (1971) (internal quotations omitted)). However, such a "reputational harm must be 'coupled with an additional deprivation of a protected right or interest.'" *Matthews*, 717 F. Supp 2d at 453 (quoting *Baraka v. McGreevey*, 481 F.3d 187, 208 (3d Cir.2007)).

Even treating all of Plaintiff's allegations as true, Plaintiff has failed to allege sufficient facts to demonstrate that he suffered injury to his reputation or that the harm was in conjunction with the deprivation of another cognizable right or interest. Therefore, Count X is dismissed without prejudice.

### 3. New Jersey Tort Claims Act (Counts III, XII, XIII, XV)

Plaintiff alleges causes of action under the NJTCA, N.J.S.A. 59:1-1, *et seq.*, for the Officers' false imprisonment of his person (Count III), Officers Martinez and Forcenito's assault and battery of his person (Count XII), Officer Forcenito's intrusion upon Plaintiff's seclusion from invasive touching (Count XIII), and Police Chief David Wayman's negligent hiring of Officers Freeman and Martinez (Count XV).

As a threshold matter, a party that asserts a tort claim seeking damages from a public entity or public employee must comply with the NJTCA, which "establishes the procedures by which [such] claims may be brought." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 213 N.J. 130, 146 (2013) (quoting *Beauchamp v. Amedio*, 164 N.J. 111, 116 (2000)). One requirement is "that a timely pre-suit notification about the existence of the claim and its particulars be provided to the defendants." *Id.* N.J.S.A. 59:8-8 requires that within ninety days of the claim's accrual, an individual file a "notice of claim" with the entity involved in the alleged wrongful act or the New Jersey Attorney General. Additionally, and pertinent here, N.J.S.A. 59:8-8 further requires the claimant to wait until "*after* the expiration of six months from the date notice of claim is received . . . [to] file suit in an appropriate court of law." (emphasis added).

The FAC does not indicate whether Plaintiff submitted proper pre-suit notification. However, assuming that he did, six months have not passed from the date of the alleged

wrongdoings, June 27, 2017. As a result, the NJTCA claims are at a minimum premature as a matter of law. Consequently, the Court dismisses Counts III, XII, XIII, XV without prejudice.

### 4. Tort Claim Against Hogan

Plaintiff alleges a tort claim of assault and battery, a state tort, against Defendant Hogan. A federal court may adjudicate a state law claim when it comes within the federal court's supplemental jurisdiction. The supplemental jurisdiction statute, 28 U.S.C. § 1336, allows a district court "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (West). Supplemental jurisdiction is a matter largely within the federal court's discretion. *See Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40. Without reaching the plausibility of the FAC's allegations as to Defendant Hogan, the Court declines to exercise discretion and retain supplemental jurisdiction over the count. If Plaintiff wishes to sue Defendant Hogan for the allegedly offensive touching, Plaintiff must do so in state court. Thus Count XVI is dismissed without prejudice, but Plaintiff cannot bring it in federal court.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's application to proceed *in forma pauperis* but Plaintiff's FAC is dismissed without prejudice as to Counts II, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV. As to these counts, Plaintiff may file an amended complaint within thirty days and address the deficiencies noted in the Opinion if he so chooses. If Plaintiff fails to file an amended complaint within thirty days, those counts will be dismissed with prejudice. With Prejudice means that Plaintiff will be legally prohibited from raising those claims again in any court. Count XVI against Defendant Hogan is also dismissed without prejudice but Plaintiff

cannot bring this claim against Defendant Hogan in an amended complaint in this Court. Counts I, III, IV, and V have survived the initial screening.[7] Even though certain counts have passed the initial screening stage, the Court will not order that the FAC be served at this time. Instead, the Court will wait to see if Plaintiff files another amended complaint within thirty days. If Plaintiff does so, the Court will screen the amended pleading. If not, the Court will order service of the FAC on those Defendants who remain and will also require that a copy of this Opinion accompany the service so that it is clear which counts have survived the initial screening stage.

An appropriate form of Order accompanies this Opinion.

Dated: September 29, 2017

John Michael Vazquez, U.S.D.J.

---

[7] Counts I and III remain against Officers O'Keefe, Martinez, Forcenito, Johnson, and Freeman. Counts IV and V remain against Officers Martinez and Forcenito. No counts remain against Defendants the Township of Westfield, Kenneth Hogan, or David Wayman.